KEVIN A. DARBY, NVSB# 7670
TRICIA M. DARBY, NVSB# 7956
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada 89519
Telephone: (775) 322-1237
Facsimile:   (775) 996-7290
E-mail: kevin@darbylawpractice.com

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

In re:

DWIGHT C. MILLARD,

STANTON PARK DEVELOPMENT, INC.,

CARSON CITY PLAZA, LLC,

      Joint Debtors.
_____ /

CASE NO.:  BK-N-11-50677-gwz (LEAD)
Chapter 11 Cases Under Joint Administration

CASE NO.:  BK-N-11-50438-gwz

CASE NO.:  BK-N-11-50439-gwz

# THIRD AMENDED

# CHAPTER 11 PLAN OF REORGANIZATION

# FOR

# STANTON PARK DEVELOPMENT, INC.

# TABLE OF CONTENTS

1.    INTRODUCTION  ........................................................................... 4

2.    DEFINITIONS ...........................................................................  4

3.    CLAIMS AND INTERESTS ...........................................................  9

4.    TREATMENT OF CLAIMS AND INTERESTS ...................................  10

    4.1    Class 1 (Priority Secured Tax Claims)...................................... 10

    4.2    Class 2 (BB&T Bank) .......................................................... 10

    4.3    Class 3 (BB&T Bank).......................................................... 11

    4.4    Class 4 (Jim Bird, *et. al.*) ................................................... 12

    4.5    Class 5 (David L. Cunningham) ............................................. 13

    4.6    Class 6 (Eagle Highlands, II HOA) ........................................ 14

    4.7    Class 7 (Heritage Bank) ...................................................... 15

    4.8    Class 8 (Edward Mayo, *et al.*) .............................................. 16

    4.9    Class 9 (Wells Fargo Bank) .................................................. 17

    4.10   Class 10 (Unsecured Creditors) ............................................ 17

    4.11   Class 11  (Equity Security Holders) ....................................... 18

5.    TREATMENT OF UNCLASSIFIED CLAIMS ...................................  18

    5.1    Unclassified Claims  ........................................................... 18

    5.2    Administrative Expense Claims ............................................. 18

    5.3    Priority Tax Claims ............................................................ 18

    5.4    United States Trustee Fees ................................................... 18

    5.5    Disputed Claims ................................................................ 18

    5.6    Delay of Distribution on a Disputed Claims ............................. 19

    5.7    Settlement of Disputed Claims  ............................................. 19

6.    EXECUTORY CONTRACTS  ........................................................ 19

7.    MEANS OF IMPLEMENTING AND FUNDING THE PLAN ...................................... 19

    7.1    Funding The Plan  ....................................................................................... 20

    7.2    Revesting of Assets in the Debtor  ........................................................... 21

    7.3    Disbursing Agent  ....................................................................................... 21

    7.4    Request for Application of 11 U.S.C. § 1129(b) ................................... 21

    7.5    Post-Confirmation Litigation  ................................................................... 21

    7.6    Post-Confirmation Default ........................................................................ 21

8.    FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ................................. 22

9.    INJUNCTION .......................................................................................................... 22

10.    EXCULPATION ......................................................................................................... 22

11.    MISCELLANEOUS PROVISIONS ......................................................................... 24

12    RETENTION OF JURISDICTION ......................................................................... 24

13.    MODIFICATION OF PLAN ...................................................................................... 25

14.    DISCHARGE ............................................................................................................. 25

## 1.   INTRODUCTION

This Third Amended Plan of Reorganization (the "Plan") under chapter 11 of the United States Bankruptcy Code proposes to pay creditors of STANTON PARK DEVELOPMENT, INC. from net cash flow from future income from the operation of his business.

This Plan provides for one (1) class of priority secured real property tax claims, nine (9) classes of secured claims, one (1) class of unsecured claims and one (1) class of equity security holders. This Plan also provides for the payment of administrative and priority claims.   General unsecured creditors are classified in Class 10 and will receive a total combined distribution equal to twenty-five percent (25%) of their allowed claims, which Debt estimates will require approximately $1,300,000. Debtor estimates that in a chapter 7 liquidation case, creditors would receive a total combined distribution of $0.00, i.e. zero cents on the dollar ($0.02).   This Plan provides unsecured creditors substantially more than the amount they would receive in a liquidation case.

All creditors should refer to Sections 3-6 of this Plan for information regarding the precise treatment of their claim.   A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.   Your rights may be affected.   You should read these papers carefully and discuss them with your attorney, if you have one.   If you do not have an attorney, you may wish to consult one.

## 2.   DEFINITIONS

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. Any capitalized term not defined herein that is defined in the Bankruptcy Code shall have the meaning ascribed to it in the Bankruptcy Code.   Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when used in this Plan:

(a)      "**Administrative Claims**."   Claims arising during the administration of Debtor's Chapter 11 case entitled to priority under Section 507(a)(1) of the Bankruptcy Code. As required by the Bankruptcy Code, holders of such Allowed Administrative Claims against Debtor shall receive cash in the amount of such allowed claim on the Effective Date.

4

(b)    "**Allowed Claim**."  This term will refer to and mean every claim: (I) as to which a proof of claim has been filed with the Court within the time fixed by the Court or, if such claim arises from the Debtor's rejection of an unexpired lease or other executory contract, within thirty (30) days after the Effective Date of the Plan, or (ii) which is scheduled as of the Confirmation Date of the Plan in the schedules filed by the Debtor or amended by the Debtor as of said date, and is liquidated in amount and undisputed; and in either of the above events, as to which no objection to allowance of such claim or request for subordination thereof has been filed within any applicable time period fixed by the Court or as to which an order allowing such claim and establishing its priority has become final and non-appealable.  An allowed secured claim shall include all accrued interest and attorneys fees, to the extent the same are allowable under 11 U.S.C. § 506, and to the extent attorneys fees are reasonable or are approved by the Bankruptcy Court after notice and hearing.

(c)    "**Allowed Class 1 Priority Secured Claim**."  This term shall mean the allowed priority secured claims of the Carson City Treasurer (Class 1A in the amount of $405,308.74), the Lyon County Tax Collector (Class 1B in the amount of $60,971.10), and the Storey County Tax Collector (Class 1C in the amount of $21,101.65), in accordance with 11 U.S.C. § 506, which shall be in the combined amount of $487,381.49.

(d)    "**Allowed Class 2 Secured Claim**." This term shall mean the allowed secured claim of Branch Banking &Trust Company ("BB&T"), in accordance with 11 U.S.C. § 506, which shall be in the amount of $4,845,231.09, or such other amount that is established to be the amount due on BB&T's first priority deed of trust recorded against the Stanton Arms Apartments, 975 Woodside Drive, Carson City, NV.  This claim is fully secured based on the current fair market value of $6,090,000 for the collateral securing the obligation.

(e)    "**Allowed Class 3 Secured Claim**."  This term shall mean the allowed secured portion of the claim of BB&T, which at the time this case was filed was purported to be secured by a **second** priority deed of recorded against the Stanton Arms Apartments, 975 Woodside Drive, Carson City, NV, and shall be in the approximate amount of $1,244,768.91, or such other amount that is

5

established to be the amount due on BB&T's first priority deed of trust, in accordance with 11 U.S.C. §
506.  The precise amount of the Allowed Class 3 Secured Claim shall be determined by the amount of
the Allowed Class 2 Secured Claim, adjusted to the fair market value of the collateral of $6,090,000.

        (f)      "**Allowed Class 3 Unsecured Claim**."   This term shall mean the allowed
unsecured portion of the claim associated with the second priority deed of trust of BB&T, in accordance
with 11 U.S.C. § 506, which is estimated to be in the amount of $1,330,180.93.

        (g)      "**Allowed Class 4 Secured Claim**."  This term shall mean the allowed secured
portion of the claim of Jim Bird, Nadeen Crawford, Tom Garretson, Katheryn Millard and Randall
Millard (collectively, Jim Bird, *et al.*), each with their respective fractional percentage interest identified
in the promissory note and deed of trust.  More specifically, Jim Bird, 22.73%; Tom Garretson, 45.45%;
Katheryn Millard, 4.55%; Randall Millard, 15.91%; and Nadeen Crawford, 11.36%.  The claim owed
Jim Bird, *et al.*, shall be in the amount of $430,000, in accordance with 11 U.S.C. § 506, and the
obligation is a first priority secured interest in real property described as 5 unimproved parcels located 6
Mile Canyon and Highway 50, Lyon County, Nevada.

        (h)      "**Allowed Class 5 Secured Claim**."  This term shall mean the allowed secured
portion of the claim of David L. Cunningham, in accordance with 11 U.S.C. § 506, which shall be in the
amount of $158,400, or such other amount that is established to be the value of David L.  Cunningham's
first priority secured interest in 2630 E. Nye Lane, Carson City, NV.

        (i)      "**Allowed Class 6 Secured Claim**."  This term shall mean the allowed secured
portion of the claim of the Eagle Highlands, II Homeowners Association, in accordance with 11 U.S.C.
§ 506, which shall be in the amount of $67,217.25, which is the value of Eagle Highlands, II's secured
interest in 11 Eagle Highlands condominiums, Carson City, NV.   The claim represents unpaid
association dues, assessments and fees.

        (j)      "**Allowed Class 7 Secured Claim**."  This term shall mean the allowed secured
portion of the claim of Heritage Bank, in accordance with 11 U.S.C. § 506, which shall be in the amount
of $900,000, or such other amount that is established to be the value of Heritage Bank's first priority

secured interest in 11 Eagle Highlands condominiums described as 4256 Pheasant Drive, 4250 Pheasant Drive, 4244 Pheasant Drive, 4232 Pheasant Drive, 4203 Pheasant Drive, 4208 Pheasant Drive, 4203 Ferguson Ranch, 4209 Ferguson Ranch, 4215 Ferguson Ranch, 4263 Ferguson Ranch, 4269 Ferguson Ranch Ferguson Ranch, Carson City, NV.

(k)    "**Allowed Class 8 Secured Claim**."  This term means the allowed secured portion of the claim of Edward G. Mayo and Jocelyne Helzer, as to an undivided 43.65% interest, and Francoise Demers and Jocelyne Helzer, as to an undivided 56.35% interest (collectively, Edward Mayo, *et al.*), in accordance with 11 U.S.C. § 506, which shall be in the amount of $142,148, or such other amount that is established to be the value of Edward Mayo, *et al.*'s first priority secured interest in 300 lots on 160 acres in Canyon Estates, Dayton Valley, Storey County, NV.

(l)    "**Allowed Class 9 Secured Claim**."  This term shall mean the allowed secured portion of the claim of Wells Fargo Home Mortgage, in accordance with 11 U.S.C. § 506, which shall be in the amount of $38,886.24, or such other amount that is established to be the value of Wells Fargo Home Mortgage's first priority secured interest in the single-family residence located at 3651 Desatoya Drive, Carson City, NV.

(m)    "**Bankruptcy Case**."  This term means the Chapter 11 case entitled STANTON PARK DEVELOPMENT, INC., a Nevada corporation, Case No. BK-N-11-50438-GWZ.

(n)    "**Bankruptcy Code**," or "**Code**."  These terms mean the Bankruptcy Code of 1978, as codified in Title 11 of the United States Bankruptcy Code by Public Law 95-598, including all amendments thereof and thereto.

(o)    "**Bankruptcy Court**."  This term means the United States Bankruptcy Court for the District of Nevada, Reno, or such other court as has jurisdiction of these Chapter 11 cases.

(p)    "**Claim**."  This term means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmeasured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable

7

remedy is reduced to judgment, fixed, contingent, matured, unmeasured, disputed, undisputed, secured or unsecured.

(q) "**Confirmation Date**."  This term refers to and shall mean the date on which the Court enters its Order confirming Debtor's Plan of Reorganization, or any subsequently amended plan of reorganization.

(r) "**Confirmation Hearing**."  This term shall mean the hearing or hearings in which the Bankruptcy Court considers confirmation of the Plan.  The actual date of the hearing can be found on the Notice of Hearing, served herewith.

(s) "**Debtor**."  The term Debtor means STANTON PARK DEVELOPMENT, INC., the Chapter 11 Debtor in Case No. BK-N-11-50438-GWZ.

(t) "**Disclosure Statement**."  Disclosure Statement means this Disclosure Statement filed by the Debtor, as amended, and as approved by the Bankruptcy Court.

(u) "**Effective Date**."  This term shall mean the date which is the first day of the first month at least thirty (30) days following the Confirmation Date.

(v) "**Notice of Hearing**."  This term means the Notice Of Hearing For Final Approval Of Debtor's Disclosure Statement And Confirmation Of Chapter 11 Plan Of Reorganization filed with the Court in this case, a copy of which is served with this Disclosure Statement.

(w) "**Petition Filing Date**."  This term shall refer to February 14, 2011, the date on which Debtor filed their voluntary petition commencing the above-captioned Chapter 11 case.

(x) "**Plan**."  This term shall refer to Debtor's Plan of Reorganization, together with any amendments or modifications thereto as may hereafter be filed by the Debtor.

(y) "**Post Confirmation**."  This term shall mean the period of time after the Confirmation Date.

(z) "**Priority Claims**."  This term shall refer to expenses and claims as more specifically set forth in 11 U.S.C. § 507, *et seq.*  In addition to administrative expenses such as Debtor's attorney's fees, there are Class 1 Priority Claims against the Debtor for real property taxes due Carson

City, Lyon County and Storey County.  Debtor estimates that unpaid attorney's fees, through the confirmation hearing, will be approximately $50,000.00.

(aa) "**Reorganized Debtor**."  This term means STANTON PARK DEVELOPMENT, INC. following the Confirmation Date.

(bb) "**Scheduled Claim**."  This means the total amount of a creditors pre-petition claim against Debtor, as set forth in the Schedules to Debtor's Bankruptcy Petition, as may be amended.

(cc) "**SFR**."  This abbreviation is used to describe single-family residences owned by the Debtor that are rented to and occupied by renters or tenants.

(dd) "**Unsecured Claim**."  This shall mean a Claim that is not secured by a pledge of or security interest in any of the Debtor's property.

**3. CLAIMS AND INTERESTS**

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests. Administrative Claims and Priority Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.

**3.1 Class 1.** The priority secured tax claims entitled to priority under § 507 of the Code, including real estate property taxes owed CARSON CITY, LYON COUNTY TREASURER and STOREY COUNTY TREASURER.

**3.2 Class 2.** The secured claim of BB&T, to the extent allowed as a secured claim under § 506 of the Code, for its first deed of trust recorded against Debtor's real property.

**3.3 Class 3.** The secured claim of BB&T BANK, to the extent allowed as a secured claim under § 506 of the Code, for its second deed of trust recorded against Debtor's real property.

**3.4 Class 4.** The secured claim of JIM BIRD, *et al.*, to the extent allowed as a secured claim under § 506 of the Code.

**3.5 Class 5.** The secured claim of DAVID L.  CUNNINGHAM, to the extent allowed as a secured claim under § 506 of the Code.

  **3.6** <u>**Class 6.**</u>  The secured claim of EAGLE HIGHLANDS, II, to the extent allowed as a secured claim under § 506 of the Code.

  **3.7** <u>**Class 7.**</u>  The secured claim of HERITAGE BANK, to the extent allowed as a secured claim under § 506 of the Code.

  **3.8** <u>**Class 8.**</u>  The secured claim of EDWARD MAYO, *et al.*, to the extent allowed as a secured claim under § 506 of the Code.

  **3.9** <u>**Class 9.**</u>  The secured claim of WELLS FARGO HOME MORTGAGE, to the extent allowed as a secured claim under § 506 of the Code.

  **3.10** **Class 10.**  All general unsecured claims allowed under § 502 of the Code.

  **3.11** **Class 11.**  The owners, or equity security holders, of the Debtor. The equity security holders are Dwight Millard, as to a 71.43% interest; and Tom Garretson, as to a 28.57% interest.

**4.** **TREATMENT OF CLAIMS AND INTERESTS.**

 **4.1** **Class 1 (SECURED PRIORITY CLAIMS)**

 The Class 1 Priority Claims are divided into three sub-classes comprising the Carson City Treasurer (Class 1-A), Lyon County Treasurer (Class 1-B) and Storey County Treasurer (Class 1-C) and shall be treated under the Plan as follows:

 The Class 1 priority tax claimants shall retain their statutory lien against the Debtor's real property as allowed by Nevada statutes, shall bear interest at the rate of 4% per annum, and shall be paid by equal monthly payments over a period of one hundred and twenty (120) months, commencing on the first day of the first month following the Effective Date and continuing until the Class 1 Creditors are paid in full. The approximate proposed plan payments are: Class 1-A Carson City Treasurer, $4,103.55/mo.; Class 1-B Lyon County Treasurer, $617.30/mo.; and Class 1-C Storey County Treasurer, $213.64/mo.

 **4.2** **Class 2 (BB&T)**

 The Class 2 claim of BB&T (note and first deed of trust) is impaired by this Plan and shall be treated under the Plan as follows:

  (1) <u>Treatment of Allowed Class 2 Secured Claim</u>

 The Allowed Class 2 Secured Claim shall retain its lien and be paid in full by amortized monthly

payments made directly to the Class 2 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of ten (10) years and shall paid based on a twenty-five (25) year amortization schedule and bear interest fixed at the rate of five-percent (5%) per annum, which produces monthly principal and interest payments in the amount of $28,324.74.  On the fifth (5th) day of the first (1st) month following the 120th monthly payment, Debtor shall pay the then outstanding balance of the Class 2 claim, estimated to be $3,604,237.  Debtor may pay the outstanding balance of the Allowed Class 2 Secured Claim at any time prior to the expiration of the 10-year term without pre-payment penalty.

### (2) Loan Documents Remain In Effect

The terms of the promissory note underlying the Allowed Class 2 Secured Claim and the related deed of trust (the "Class 2 Loan Documents.") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

### (3) Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fails to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 2 claimholder shall be entitled to enforce all of the terms of the Class 2 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 2 Secured Claim at any foreclosure sale.

## 4.3    Class 3 (BB&T)

The Class 3 Claim of BB&T (note and second deed of trust) is impaired and shall be treated under the Plan as follows:

### (1)  Treatment of Allowed Class 3 Secured Claim

The Allowed Class 3 Secured Claim shall retain its second-priority lien and the secured portion of such claim will be paid in full by amortized monthly payments made directly to the Class 3 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of ten (10) years

and shall bear interest at the rate of six-percent (6%) per annum based on a twenty-five (25) year amortization schedule, which produces monthly principal and interest payments in the amount of $7,891.20. On the fifth (5th) day of the first (1st) month following the 120th monthly payment, Debtor shall pay the then outstanding balance of the Class 3 claim, estimated to $935,136 will be due and payable in full.  Debtor may pay the outstanding balance of the Allowed Class 3 Secured Claim at any time prior to the expiration of the 10-year term without pre-payment penalty.

> (2)  <u>Treatment of Allowed Class 2 Unsecured Claim</u>

The Allowed Class 2 Unsecured Claim shall be reclassified to Class 10 and treated as an unsecured creditor in accordance with this Plan.

> (3)  <u>Loan Documents Remain In Effect</u>

The terms of the promissory note underlying the Allowed Class 3 Secured Claim and the related deed of trust (the "Class 3 Loan Documents.") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

> (4)  <u>Plan Default</u>

In the event of a default by the Debtor under the Plan, and in the event Debtor fails to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 3 claimholder shall be entitled to enforce all of the terms of the Class 3 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 3 Secured Claim at any foreclosure sale.

**4.4    Class 4 (Jim Bird,** *et al.***)**

The Class 4 Claim of JIM BIRD, NADEEN CRAWFORD, TOM GARRETSON, KATHERYN MILLARD AND RANDALL MILLARD (collectively, Jim Bird, *et al.*) is impaired and shall be treated under the Plan as follows:

> (1)  <u>Treatment of Allowed Class 4 Secured Claim</u>

The Allowed Class 4 Secured Claim shall retain its lien and be paid by amortized monthly payments made directly to the Class 4 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every

month thereafter, the Debtor shall distribute to the Class 4 Creditor an amount equal to the normal amortized monthly payment based upon the a four and one-half percent (4.5%) interest rate and a 30-year amortized mortgage term, or $2,178.75 per month (based on $430,000 note balance).  Distributions to the individual creditors shall be made in the same fractional percentage interest identified in the note and deed of trust.  More specifically, Jim Bird, 22.73%; Tom Garretson, 45.45%; Katheryn Millard, 4.55%; Randall Millard, 15.91%; and Nadeen Crawford, 11.36%.

        (2)  <u>Payment of the Balance Due on the Secured Claim</u>

The balance owed on the secured claim, together with any and all accrued interest, fees and costs due thereunder (projected to be approximately $351,500), shall be paid in full on or before ten (10) years following the Effective Date.

        (3)  <u>Loan Documents Remain In Effect</u>

The terms of the promissory note underlying the Allowed Class 4 Secured Claim and the related deed of trust (the "Class 4 Loan Documents.") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

        (4)  <u>Plan Default</u>

In the event of a default by the Debtor under the Plan, and in the event Debtor fails to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 4 claimholder shall be entitled to enforce all of the terms of the Class 4 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 4 Secured Claim at any foreclosure sale.

**4.4**    **Class 5 (DAVID L. CUNNINGHAM)**

The Class 5 Claim of David L. Cunningham is impaired and shall be treated under the Plan as follows:

        (1)  <u>Treatment of Allowed Class 5 Secured Claim</u>

The Allowed Class 5 Secured Claim shall retain its lien and be paid interest-only monthly payments, calculated at four and a half percent (4.5%) per annum, directly to the Class 5 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and

continuing on the fifth (5th) day of each and every month thereafter for a period of sixty (60) months. Such monthly interest-only payments shall be in the amount of $594 ($158,400 at 4.5% interest).

### (2) Payment of the Balance Due on the Secured Claim

The principal balance owed on the secured claim (of $158,400), together with any and all accrued interest, fees and costs due thereunder, shall be paid in full on or before five (5) years following the Effective Date.

### (3) Loan Documents Remain In Effect

The terms of the promissory note underlying the Allowed Class 5 Secured Claim and the related deed of trust (the "Class 5 Loan Documents.") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

### (4) Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fails to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 5 claimholder shall be entitled to enforce all of the terms of the Class 5 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 5 Secured Claim at any foreclosure sale.

### 4.5  Class 6 (Eagle Highlands, II Homeowners Association)

The Class 6 claim of EAGLE HIGHLANDS, II HOMEOWNERS ASSOCIATION (HOA) is impaired and shall be treated under the Plan as follows:

### (1) Treatment of Allowed Class 6 Secured Claim

The Allowed Class 6 Secured Claim shall retain its lien and be paid monthly payments directly to the Class 6 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a period of sixty (60) months.  The unpaid balance due the Class 6 claimant of $67,217.25 shall accrue interest at 4% per annum, and paid in full with sixty (60) monthly payments of $1,237.91 each.

### (2) Declaration of Covenants, Conditions and Restrictions Remain In Effect

The terms of the Declaration of Covenants, Conditions and Restrictions underlying the Allowed

Class 6 Secured Claim (the "CC&Rs") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

   (3) <u>Plan Default</u>

In the event of a default by the Debtor under the Plan, and in the event Debtor fails to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 6 claimholder shall be entitled to enforce all of the terms of the Class 6 CC&Rs, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 6 Secured Claim at any foreclosure sale.

**4.6 Class 7 (Heritage Bank)**

The Class 7 claim of HERITAGE BANK is impaired and shall be treated under the Plan as follows:

   (1) <u>Treatment of Allowed Class 7 Secured Claim</u>

The Allowed Class 7 Secured Claim shall retain its lien and be paid by amortized monthly payments made directly to the Class 7 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter, the Debtor shall distribute to the Class 7 Creditor an amount equal to the normal amortized monthly payment based upon the a four and one-half percent (4.5%) interest rate and a 30-year amortized mortgage term, or $4,560.17 per month (based on $900,000 note balance).

   (2) <u>Payment of the Balance Due on the Secured Claim</u>

The principal balance owed on the secured claim (projected to be approximately $780,000), together with any and all accrued interest, fees and costs due thereunder, shall be paid in full on or before seven (7) years following the Effective Date.

   (3) <u>Loan Documents Remain In Effect</u>

The terms of the promissory note underlying the Allowed Class 7 Secured Claim and the related deed of trust (the "Class 7 Loan Documents.") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

   (4) <u>Plan Default</u>

In the event of a default by the Debtor under the Plan, and in the event Debtor fails to cure such

default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 7 claimholder shall be entitled to enforce all of the terms of the Class 7 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 7 Secured Claim at any foreclosure sale.

**4.7    Class 8 (Edward Mayo, et al)**

The Class 8 claim of Edward Mayo, ET AL., is impaired and shall be treated under the Plan as follows:

(1) <u>Treatment of Allowed Class 8 Secured Claim</u>

The Allowed Class 8 Secured Claim shall retain its lien and be paid by amortized monthly payments made directly to the Class 8 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter, the Debtor shall distribute to the Class 8 Creditor an amount equal to the normal amortized monthly payment based upon the a four and one-half percent (4.5%) interest rate and a 30-year amortized mortgage term, or $720.24 per month (based on $142,148 note balance).  Distributions to the individual creditors shall be made in the same fractional percentage interest identified in the note and deed of trust.  More specifically, Demers/Helzer, 43.65%; and Mayo/Helzer, 56.35%.

(2) <u>Payment of the Balance Due on the Secured Claim</u>

The balance owed on the secured claim, together with any and all accrued interest, fees and costs due thereunder (projected to be approximately $113,500), shall be paid in full on or before ten (10) years following the Effective Date.

(3) <u>Loan Documents Remain In Effect</u>

The terms of the promissory note underlying the Allowed Class 8 Secured Claim and the related deed of trust (the "Class 8 Loan Documents.") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(4) <u>Plan Default</u>

In the event of a default by the Debtor under the Plan, and in the event Debtor fails to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel,

the Class 8 claimholder shall be entitled to enforce all of the terms of the Class 8 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 8 Secured Claim at any foreclosure sale.

### 4.8    Class 9 (WELLS FARGO HOME MORTGAGE)

(1) <u>Treatment of Allowed Class 9 Secured Claim</u>

The Allowed Class 9 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 9 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of ten (10) years and shall bear interest at the rate of four and one-half percent (4.5%) per annum, which produces monthly principal and interest payments in the amount of $405.13 (based on approximate $38,900 note balance).  Debtor may pay the outstanding balance of the Allowed Class 9 Secured Claim at any time prior to the expiration of the 10-year term without pre-payment penalty.

(2) <u>Loan Documents Remain In Effect</u>

The terms of the promissory note underlying the Allowed Class 9 Secured Claim and the related deed of trust (the "Class 9 Loan Documents.") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(3) <u>Plan Default</u>

In the event of a default by the Debtor under the Plan, and in the event Debtor fails to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 9 claimholder shall be entitled to enforce all of the terms of the Class 9 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 9 Secured Claim at any foreclosure sale.

### 4.10.   Class 10  (UNSECURED CREDITORS)

Allowed Class 10 General Unsecured Creditors shall receive a total combined distribution of $1,300,000, which Debtor estimates will pay twenty-five percent (25%) of each Allowed Class 10

General Unsecured Claim.  Commencing on the Effective Date, and continuing on the first day of each third full month thereafter, the Allowed Class 10 Unsecured Creditors shall receive quarterly pro rata disbursements of $15,000.00 for a period of 120 months, followed by quarterly pro rata disbursements of $35,000.00, until a total of $1,300,000 has been paid to general unsecured creditors, which is estimated to occur one hundred and eighty months after the Effective Date of the Plan.  Any portion of a Class 10 Claim not paid by this Plan shall be forever discharged and unenforceable against the Debtor.

**4.11    Class 11 Interests (MEMBERS OF THE DEBTOR)**

All members of the Debtor shall retain their equity interest in the Debtor.  Specifically, Dwight C. Millard and Thomas Garretson shall retain their fractional ownership interest in the Debtor, but shall receive no distribution until all payments to Classes 1 through 10 are completed.

**5.    UNCLASSIFIED CLAIMS AND INTERESTS; DISPUTED CLAIMS**

**5.1    Unclassified Claims**.  Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

**5.2    Administrative Expense Claims.**  Except as otherwise provided herein, all administrative expense claimholders allowed under §  503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Art. VII).

**5.3    Priority Tax Claims.**  Except as otherwise provided in Section IV, below, each holder of a priority tax claim will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

**5.4    United States Trustee Fees.**  All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**5.5    Disputed Claim.** A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.6** **Delay of Distribution on a Disputed Claim.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**5.7** **Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**6.** **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1** **Assumed Executory Contracts and Unexpired Leases.**

(a) All executory contracts of the Debtor are assumed, and shall be maintained current, including, without limitation, the various rental contracts with the Debtor's tenants. The Debtor is current on post-petition payments on all assumed executory contracts.

(b) The Debtor will conclusively have deemed to reject all executory contracts and/or unexpired leases not expressly assumed under section 6 above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

**7.** **MEANS OF IMPLEMENTING AND FUNDING THE PLAN**

**7.1** **Funding The Plan**

The payments required under the Plan will be funded by the rental income generated from the respective real properties. Debtor projects that the it will continue to have income consistent with the average income established during the 20-months of this case. Specifically, Stanton Arms Apartments is projected to generate approximately $81,000 per month, taking into account unforeseen vacancies. The Eagle Highlands Condos should generate approximately $8,100 per month, and Debtor's individual rental properties will combine total of $5,400 per month. This gives Debtor projected monthly income of $94,500 to fund the Debtor's operating expenses and plan obligations. Debtor's combined monthly operating expenses are projected to average a total of $37,690 per month, leaving the Debtor with a total of $56,810 per month to fund payments required by the Plan and to fund unexpected expenses, repairs and maintenance. A more detailed analysis of Debtor's projected income and operating expenses post confirmation is below:

| Monthly Income/Expenses | Stanton Arms Apartments | Eagle Highlands Condos | Single Family Rental Properties |
|---|---|---|---|
| *Rental Income* | **$81,000** | **$8,100** | **$5,400** |
| *Expenses:* | | | |
| Maintenance & Management | $15,000 | $2,500 | $1,500 |
| Power | $300 | $25 | $45 |
| Gas | $25 | $25 | $45 |
| Water/Sewer | $5,000 | $100 | $250 |
| Property Taxes | $6,550 | $950 | $500 |
| Insurance | $1,750 | | $425 |
| Landscaping | $600 | | $100 |
| Waste Management | $2,000 | | |
| Association Fees | | $2,600 | |
| *Total Expenses* | *$31,225* | *$3,600* | *$2,865* |
| **Available To Fund Plan** | **$49,775** | **$4,500** | **$2,535** |

As detailed above, after operating expenses, the Debtors project an average $56,810 per month to be available to pay Debtor's obligations under this Plan. Debtor's project that these payments will total $56,712 as follows:

| Class Under Plan | Monthly Plan Payment |
|---|---|
| Class 1 | $6,635 |
| Class 2 | $28,325 |
| Class 3 | $7,891 |
| Class 4 | $2,179 |
| Class 5 | $594 |
| Class 6 | $1,235 |
| Class 7 | $4,560 |
| Class 8 | $721 |
| Class 9 | $405 |
| Class 10 | $4,167 (for 12 months, followed by $11,66 month for 60 months) |
| **Total:** | **$56,712** |

Debtor's properties generate sufficient monies to pay not only debt service, but also surplus income to pay other claims. When the Allowed Class 1 Priority Unsecured Claims are fully satisfied, Debtor shall commence making quarterly payments to the Class 10 Unsecured Creditors, until paid in accordance with this Plan.

Any prorated payment to creditors whose claims are not liquidated or disputed shall be paid into a segregated trust account maintained at the Darby Law Practice until such claims are an allowed claim, in which event the proceeds shall be disbursed, or such claims shall be disallowed, in which case such sums shall be included in the next disbursement to creditors.

### 7.2    Revesting of Assets in the Debtor

Upon confirmation of the Plan, all property of the estate of the Debtor shall be revested in STANTON PARK DEVELOPMENT, INC., pursuant to 11 U.S.C. § 1141(c), which shall retain such property as the Reorganized Debtor free and clear of all claims and interests of the creditors, except as set forth in the Plan.

### 7.3    Disbursing Agent

The Reorganized Debtor will serve as disbursing agent and shall disburse all property to be distributed under the Plan. The disbursing agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

### 7.4    Request for Application of 11 U.S.C. § 1129(b)

The Debtor, as Plan proponent, will request the Court to find that the provisions for dissenting classes provide for fair and equitable treatment of said creditors, and to confirm its Plan notwithstanding the requirements of § 1129(a)(8) as to such classes.

### 7.5    Post-Confirmation Litigation

The Debtor does not anticipate any post-confirmation litigation, except for collection matters or evictions that occur in the normal course of the Debtor's business, and the determination of certain claims. The Debtor reserves the right to prosecute any objections to claims.

### 7.6    Post-Confirmation Default

In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel at the

following addresses:

> **Kevin A. Darby, Esq.**          **STANTON PARK DEVELOPMENT, INC.**
> **4777 Caughlin Parkway**       **2989 U.S. Highway 50 East**
> **Reno, Nevada 89519**          **Carson City, Nevada 89701**

The Debtor shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default. In the event such default remains uncured, the affected creditor or creditors may bring the matter before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to bring the payment(s) current in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Code or dismissal if the same is in the best interests of creditors.

**8.    FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

Pursuant to the Plan, funding will be accomplished from the Debtor's income from which the Debtor intends to pay all taxes associated with its post-confirmation earnings. Creditors are advised to discuss with their own tax advisor any tax effect to the creditor of such payments.

**9.    INJUNCTION**

From and after the Effective Date, and except as provided in the Plan and the Confirmation Order, all entities that have held, currently hold or may hold a Claim are permanently enjoined from taking any of the following actions on account of any such Claims: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, or its Property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor, or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor, or their respective property; or (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

**10.   EXCULPATION**

From the Petition Date through the Effective Date, the Debtor and its agents and employees shall

not have any liability to the Debtor or any other claimants or creditors, or other parties in interest in the Bankruptcy Case for any act or omission in connection with or arising out of the Bankruptcy Case, including, without limitation, prosecuting confirmation of the Plan, confirmation of the Plan, and the administration of the estate, the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects, such persons will be entitled to rely on the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Case and the Plan.

**11.    MISCELLANEOUS PROVISIONS**

(A)    Any creditor who failed to file a proof of claim on or before any Court imposed claims bar date, shall be barred from participating in any distribution under the Plan, and the Debtor shall have no further liability for such claim.

(B)    Following the Effective Date, the Debtor may continue to employ counsel for necessary legal services. Counsel may be paid from the Debtor without further order of the Court.

(C)    The estate shall be deemed to be fully administered upon the commencing of distributions to the Class 1 creditor.

(D)    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

(E)    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

(G)    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

(H)    Unless a rule of law or procedure is supplied by federal law, including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**12.    RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(A)    For the purpose specified in § 1142 of the Bankruptcy Code;

(B)     The consideration of claims and such objections as may be filed to the claims of creditors pursuant to § 502 of the Bankruptcy Code, and to file and prosecute any counterclaims against such creditors;

(C)     The fixing of compensation for the parties entitled thereto;

(D)     To hear and determine the amount of all encumbrances or the recovery of any preferences, transfers, assets or damages to which the Debtor's estate may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law;

(E)     To reinstate the automatic stay pending a determination of the amount owed on any secured claim;

(F)     To hear and decide all causes of action now held by the Debtor, or disclosed in the Plan or Disclosure Statement;

(G)     To hear and decide all adversary proceedings or contested matters currently pending in the Bankruptcy Court, or which may be filed prior to or after plan confirmation;

(H)     To resolve any disputes regarding interpretation of the Plan;

(I)     To implement the provisions of the Plan, including all provisions in the Plan which specify the retention of jurisdiction, and to make such further orders as will aid in consummation of the Plan, including the sale of any property after Plan confirmation;

(J)     To adjudicate controversies regarding property of the Debtor's estate and regarding ownership thereof, including adjudication of causes of action which constitute property of the estate;

(K)     To modify this Plan in accordance with § 1127 of the Bankruptcy Code;

(L)     To enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order; and

(M)     Enter a final decree and order closing the case.

///

///

## 13. MODIFICATION OF PLAN

The Debtor may modify the Plan with regard to the treatment of any creditor class, in connection with any agreement or settlement with such creditor class or in order to comply with requirements of the Code as established by the Court, provided such modification does not materially adversely affect any other class of creditors. Such modifications may be reflected in the order confirming the Plan of Reorganization. Any other modification of the Plan shall be in accordance with § 1127 of the Code.

## 14. DISCHARGE

Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments to unsecured creditors under this Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

DATED this 7th day of December, 2012.

DARBY LAW PRACTICE, LTD.

*/s/ Kevin A. Darby*
By:_____
KEVIN A. DARBY, ESQ. (#7670)
Counsel For Debtor